UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
: 
MP BEDFORD PROPERTY LLC,                : Case No. 20-cv-9050-JSR
:
Petitioner,                             :
:
v.                                      :
:
NEW YORK HOTEL & MOTEL TRADES           :
COUNCIL, AFL-CIO,                       :
:
Respondent.                             :
:
------------------------------X

**DECLARATION OF AMY BOKERMAN IN SUPPORT OF UNION'S MOTION**

I, Amy Bokerman, hereby declare under penalty of perjury as follows pursuant to 28 U.S.C. §1746:

1. I am employed by Respondent New York Hotel & Motel Trades Council, AFL-CIO ("Union") since August 2020 as its General Counsel, previously as Assistant General Counsel since January 2011. I am over 18 years of age and competent to make this Declaration upon my personal knowledge set forth below. If called as a witness, I could and would testify competently thereto.

Relevant Background and Labor Provisions

2. The Union is a labor organization within the meaning of federal labor law bound to the Hotel Association of New York City, Inc. – New York Hotel and Motel Trades Council, AFL-CIO Industry Wide Collective Bargaining Agreement ("IWA"). Doc. 20.

3. The Union represents over 35,000 workers employed in the hotel and hospitality industry of the greater New York City area, Northern and Central New Jersey and the New York

State Capital District.  Terms and conditions of employment for workers represented by the Union in the five boroughs of New York City are negotiated and governed by the IWA between the Union and the Hotel Association of New York City, Inc. ("Hotel Association").  Doc. 20.

4.  The IWA, at Article 26(A), establishes the broadest possible arbitration language, providing in relevant part:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto.  *Any questions regarding arbitrability, substantive, procedural or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.*

Doc. 20, at 34 (italics added).  The italicized expansion of arbitral power was added in the 2012 IWA and remains unaltered to date.

5.  The Union and Hotel Association, through the Hotel Trades Council and Hotel Association of New York City, Inc. Health Benefits Fund ("Health Benefits Fund") have established health centers in midtown Manhattan, Harlem, Queens and Brooklyn (the "Health Centers"), which provide comprehensive health care to Union members and their families without deductibles or co-pays.  Schedule B(3)(D) provides that the Harlem and Brooklyn centers are "essential."  Doc. 20 at 103.  The Health Centers are funded entirely by employer contributions to the Health Benefits Fund as a percentage of wages under IWA Article 33 and Schedule B(3).  Doc. 20 at 43, 101-03.

6.  To ensure continued coverage and benefits under any circumstances, Schedule B(3)(A) provides, in relevant part:

> Effective January 1, 2012, EMPLOYERS acknowledge and agree that they shall maintain all benefits currently provided by the Health Benefits Fund at no less than current eligibility and coverage during the life of this Agreement, and in no event shall any benefit, eligibility, or coverage be reduced for any reason absent signed agreement by the parties to the contrary.

Doc. 20 at 102.

7. IWA Article 52(A) provides for severance pay to employees suffering "termination resulting from the closing of a hotel," among other circumstances. Doc. 20 at 57. Article 52(B) prescribes the calculation of such pay to the individual employees. Doc. 20 at 57.

8. For decades, under the parties' practice and OIC precedent, "closing" under IWA Article 52 has been construed in cases of indefinite duration on a fact and circumstance basis using a general, non-binding six month rule of thumb.

9. Further, by the practice and agreement of the Union and Hotel Association, the additional benefit contributions have been allocated exclusively to the Health Benefits Fund to provide four (4) months' healthcare for out-of-work employees at the time of their greatest financial need.

10. IWA Article 57 governs conversion of a hotel to residential use, providing fifteen (15) rather than four (4) days per year severance, a greater-than three-fold increase independent and apart from Article 52 severance. *Compare* Doc. 20 at 60 *with* Doc. 20 at 57. Article 57 provides a formula for contributions to the IWA benefit funds, and, unlike Article 52, expressly terminates Hotel liability and future obligations under the IWA to affected employees. *Compare* Doc. 20 at 60 *with* Doc. 20 at 57.

11. As a result of the IWA and the very broad arbitral authority of the Office of the Impartial Chairperson ("OIC"), which the parties expressly expanded in 2012, all disputes of any

nature between the Union, industry employees, and any party bound to the IWA, have been resolved peacefully, without labor strife and with only limited litigation. There have been no industry strikes since 1985. To date, the industry has weathered and rebounded from every disaster, natural (Superstorm Sandy), human (9-11), or economic (2008 recession).

<u>Coronavirus Pandemic</u>

12. In March 2020, as a result of an unprecedented pandemic caused by the novel coronavirus ("COVID"), the then thriving New York region hospitality industry largely closed for indeterminate length. Hotel occupancy plummeted from 77% in February 2020 to about 34% in March 2020. Roughly 85% of workers represented by the Union were laid off, losing the steady income stream to support themselves and families, and facing imminent loss of health care coverage during a pandemic.

13. The drafting parties to the IWA - the Union and Hotel Association – met in attempts to address the crisis no one had ever anticipated, but could not agree on the issues of severance pay and Health Benefit Fund contributions. Accordingly, they submitted their dispute to the OIC.

14. By decision dated March 19, 2020, the IC issued Award 2020-20, which construed IWA Article 52 into its component parts, requiring employers to pay Health Benefits Fund contributions for four (4) months under the past practice application of Article 52(B), but not requiring severance pay at that point for a "closing" of indefinite duration. Doc. 20-1. As explained in Award 2020-20, the word "closing" has been construed from Article 52 by prior OIC award precedent and practice to include indefinite cessation of operations, as a rule of thumb for a period of at least six months, subject to variation based on particular facts and

circumstances of the situation and the hotel.

15. The industry – hotels and workers – complied. No hotel but one challenged Award 2020-20 in court. By petition and supporting papers on May 12, 2020, the Yotel New York moved to vacate Award 2020-20. Petition to Vacate Arbitration Award, Doc. 1, No. 20-cv-03675-JSR (S.D.N.Y).

16. Yotel withdrew its action on July 23, 2020. Stipulation of Voluntary Dismissal, Doc. 25, No. 20-cv-03675-JSR (S.D.N.Y). Yotel then participated in an arbitration of its dispute with the Union before the OIC as requested by the Union. Following hearing and argument, by Award 2020-61 dated July 16, 2020, attached hereto as Exhibit A, the IC found Yotel liable for severance pay to employees and contributions to the Health Benefits Fund because Yotel's records projected closure of at least six months with no date or firm plans to reopen in the immediate future.

17. Neither Yotel, nor the Hotel Association, nor any other hotel moved to vacate Award 2020-61 within the required ninety (90) day period for vacatur.

18. With the industry remaining in closure, COVID continuing unabated, and the Health Benefit Centers near collapse, the Union and Hotel Association once again submitted the questions of severance pay to employees and contributions to the Health Benefits Fund to the OIC, with extensive briefs.

19. In Award No. 2020-75 (Sept. 11, 2020), the IC interpreted and applied the parties' agreements, balancing the competing exigent demands during an unprecedented and unforeseen disaster, as to severance pay under Article 52 and contributions to the Health Benefits Fund under IWA Schedule B's Maintenance of Benefits requirements, regarding hotels closed for

indeterminate duration due to COVID.  Doc. 20-3.  In reaching the holdings in Award 2020-75, IC Shriftman construed the parties' language, applying their provisions in context of purpose, practice and precedent.  Doc. 20-3.

20. For both issues, the IC continued jurisdiction for those cases where the Union, Hotel Association or individual hotels believed the particular facts and circumstances exempt that hotel from the holdings of Award 2020-75 or require a different result.  Doc. 20-3, at 41-42.

21. Of approximately 242 hotels bound to the IWA, only one, Bedford/Renwick is challenging Award 2020-75 in court.  A number of other hotels are seeking individual OIC review based on their particular circumstances.

<u>Bedford d/b/a Renwick Hotel</u>

22. Bedford/Renwick is an employer within the meaning of federal labor law bound to the IWA.

23. Bedford/Renwick closed hotel operations on or about March 29, 2020. Bedford/Renwick laid off most if not all of its Union-represented workers.

24. To date Bedford/Renwick remains closed.  To date all or most of the Hotel's Union represented employees remain on layoff.

25. To date Bedford has no definite reopening or recall plans or date in the immediate future.  *See* Yantz Decl. ¶9, Doc. 19.

26. The Union commenced arbitration at the OIC against Bedford/Renwick and the Hotel's management company Highgate Hotels LP ("Highgate") as to the Hotel's obligations, hearing scheduled for November 16, 2020.

27. Prior to hearing, the Union considered claims under IWA Articles 57 and 59 based on reports that the Hotel would be converting to a homeless shelter residential use. A copy of a newspaper article and relevant portions of a City of New York Manhattan Community Board Six committee meeting reporting that a homeless shelter at the Hotel's address "will be open at some point in December" (p. 3, paragraph 3) are attached as Exhibit B.

28. The Union did not proceed on Article 57 and 59 claims, but proceeded solely as if the Hotel was temporarily closed for indefinite term, because Bedford/Renwick labor counsel denied the reports and the attorneys for the Owner of the Renwick Hotel served a "cease and desist" letter on other parties for asserting what he condemned as false allegations. Specifically, Bedford/Renwick rejected the Union's Request for Information ("RFI") dated November 13 and 18, 2020, as "irrelevant" and "false," representing that the lease between Bedford and its landlord prohibited such conversion. A copy of the Union's RFI and Bedford/Renwick denials are attached as Exhibits C and D, respectively.

29. The Union, Bedford/Renwick and Highgate submitted evidence and argument as they wished to Impartial Chairman Shriftman at hearing on November 16, 2020 and thereafter until November 30, 2020. On December 16, 2020, IC Shriftman issued Renwick Award 2020-100 finding that the "Hotel's layoff of its employees for an indeterminate period constitutes a 'termination from a closing' that triggers the Hotel's obligation under Article 52 to pay severance pay." Doc. 20-6, at 6. He further held that Bedford/Renwick had provided no reason why it, as distinguished from every other IWA hotel, should not comply with Award 2020-75 "in satisfaction of its maintenance of benefits obligations under Schedule B of the IWA." Doc. 20-6, at 7. IC Shriftman reiterated that "[c]onsistent with IC Award #2020-75 and 80, the Hotel may elect what type of payments it desires to make with respect to the payments to the employees and

the contributions to the Health Fund." Doc. 20-6, at 7.  Finally, IC Shriftman expressly retained jurisdiction on damages, relief and the Union's WARN Act claims.  Doc. 20-6, at 7.

Post Award Developments and Contingencies

30.     On December 16, 2020, Heitman Credit Acquisition XV, LLC ("Heitman"), a secured lender to Bedford, filed a Verified Complaint for a foreclosure action (the "Foreclosure Complaint") in the Supreme Court of the State of New York, New York County.  A copy of the Foreclosure Complaint is attached as Exhibit E.  According to the Foreclosure Complaint, Bedford has been in distress and in breach of its loan provisions since at least April 2020 (¶¶ 22, 23), Heitman has the legal right to seize and totally control the Hotel through a Receiver (60, 61, 34, 99) and Heitman seeks to do so for its own use and benefit to which Bedford has no legal defense (¶¶ 77, Wherefore provisions).

31.     As a result of the above, the legal obligations of Bedford/Renwick under the IWA, indeed the very facts and circumstances which dictate one or another obligation, are in flux.  It is unclear whether the Hotel falls under the reasoning of Award 2020-75 at all, whether Award 2020-100 is based on a reality that does not exist, whether the Hotel is permanently closed and/or, if it is, whether converting to non-hotel use as a homeless shelter or otherwise.

32.     Consequently, by letter dated December 22, 2020, the Union requested reconsideration of Award 2020-100, whose premises appear erroneous or uncertain as well as adjudication of issues left undecided in the Award, such as violation of the WARN Act notice requirements, the form and amount of any severance payments, and additional damages.  A copy of the letter is attached as Exhibit F.

33.     On December 29, 2020, Impartial Chairman Shriftman heard arguments and

received evidence from the Union, Bedford/Renwick, and management company Highgate, ruled that Bedford/Renwick must now respond to the Union's RFI, and continued the case to a new hearing on January 11, 2021 for further proceedings. A copy of the scheduling notice is attached as Exhibit G. The Union further clarified the issues for reconsideration by letter to IC Shriftman dated January 7, 2020. A copy of the letter is attached as Exhibit H.

34. The Union and the thousands of workers it represents have complied, painfully, with Award 2020-75. Effective January 1, 2021, the Harlem and Brooklyn Health Centers have closed. Employees and their families have been forced to find alternative more expensive health care coverage.

35. On January 6, 2021, Highgate agreed to pay severance amounts and Health Benefit Fund contributions in satisfaction of those obligations under the Awards 2020-75 and 100. The Union has agreed. Bedford/Renwick has informed Union counsel that it refuses to participate in this settlement and withdraw the Petition.

For the reasons herein and upon the authority set forth in the Union's accompanying Memorandum of Law, the Petition should be dismissed and, if the Court reaches the merits, the Awards should not be vacated.

Dated: New York, New York
       January 8, 2021

_____
Amy Bokerman