# EXHIBIT A

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (646) 992-8103

#2020-61
Yotel New York
July 16, 2020
Page 1 of 7

**EMPLOYER**:   Yotel New York

> HTC Case #U20-180/Hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO against 42nd Street and 10th Hotel, LLC d/b/a Yotel New York  Hotel ("Hotel") regarding whether the Hotel has violated IWA Article 52. The Union seeks any and all relief deemed appropriate, including but not limited to any and all amounts owed.

> Hearing held on July 6, 2020.

**A P P E A R A N C E S :**

| | |
|---|---|
| For the Employer: | Simone Noe, Director of HR<br>Pedro Diaz, General Manager |
| Counsel for the Employer:<br>By: | Baker Hostetler<br>Paul Rosenberg, Esq. |
| For the New York Hotel & Motel Trades Council, AFL-CIO:<br>Counsel:<br>By: | Pitta LLP<br>Joseph Farelli, Esq. |
| For the Union: | Richard Maroko, HTC<br>Alyssa Tramposch, HTC<br>Miguel Castaneda, HTC |

\*     \*     \*

The parties stipulated to the submission of the following issue to me:

Did the Yotel New York ("Hotel") violate Article 52 of the IWA; and, if so, what shall be the remedy?

The parties were afforded a full opportunity to submit evidence, documentary or testimonial, in support of their respective positions in this matter, as well as make any arguments in support thereof. They were offered the opportunity to submit  a post-hearing post-hearing brief, but opted to give oral summations.

The Chairperson has duly considered all of the evidence and arguments, whether or not expressly referenced or discussed herein. Further, I have taken arbitral notice regarding governmental actions taken to combat the Covid-19 virus pandemic, as well as any related orders. Additionally, inherent in the adjudication of any disputes submitted to the Office of the Impartial Chairperson ("OIC") is a mandatory deference to prior opinions and awards issued by Impartial Chairpersons, which are either persuasive or precedential.

Listed below are the exhibits submitted into the record:

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (646) 992-8103

#2020-61
Yotel New York
July 16, 2020
Page 2 of 7

**Union Exhibit 1:** October 2011 MOU

**Union Exhibit 2:** 2012-2019 IWA

**Union Exhibit 3:** May 5, 2015 E-mail from Hotel Association enc List of Hotels signed bargaining authorizations.

**Union Exhibit 4:** List of Hotels signed bargaining authorizations including Yotel

**Union Exhibit 5:** 2015 MOU modifying and extending IWA through July 1, 2026

**Union Exhibit 6:** March 24, 2020 Hotel Counsel March 24, 2020 Hotel Closure Notice

**Union Exhibit 7:** Union Counsel Follow Up to RFI

**Union Exhibit 8:** Hotel Counsel 6/25/2020 Response to RFI with enclosures

**Union Exhibit 9:** Hotel Counsel 6/26/2020 Response to RFI with enclosures

**Union Exhibit 10:** Hotel Counsel 6/29/2020 Response to RFI with enclosures

**Union Exhibit 11:** Hotel Counsel 7/5/2020 Response to RFI with enclosures

**Union Exhibit 12:** Pedro Dias 6/16/2020 Hotel Internal E-mail

**Union Exhibit 13:** Pedro Dias 6/17/2020 Hotel Internal E-mail

**Union Exhibit 14:** Hotel Notice to Guests cancelling reservations through 7/14/2020

**Union Exhibit 15:** Pedro Dias 6/24/2020 Hotel Internal E-mail

**Union Exhibit 16:** Hotel Notice to Guests cancelling reservations through 7/31/2020

**Union Exhibit 17:** Pedro Dias May 11, 2020 Sworn Declaration

**Union Exhibit 18:** Pedro Dias June 25, 2020 Sworn Declaration

**Union Exhibit 19:** Hotel's March 2020 PACE Report

**Union Exhibit 20:**  June 4, 2020 E-mail from Simone Noe to Rene Gomez

**Hotel Exhibit 1:** Hotel's Chronological Forecast from March through May 2020

**Hotel Exhibit 2:** Hotel's Pace Report dated April 28, 2020

**Hotel Exhibit 3:** Hotel's Pace Report dated May 28, 2020

**Hotel Exhibit 4:** Hotel's Pace Report dated June 24, 2020

**Hotel Exhibit 5:** Pedro Dias 4/19/2020 Hotel Internal E-mail

In addition to the presentation of documentary evidence, the Chairperson received testimony from two (2) witnesses: the Hotel's General Manager Pedro Dias ("Dias") and its Director of Labor Relations Simone Noe("Noe") who, in fact, were subpoenaed to testify by the Union. Dias was questioned at length by Union counsel.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY  10036
TEL: (212) 541-7212  FAX: (646) 992-8103

#2020-61
Yotel New York
July 16, 2020
Page 3 of 7

## FACTS

It is undisputed that the Hotel has been and still is a party to the Industry-wide Agreement ("IWA"), which is operative through 2026, by individual assumption and adoption agreement entered into in 2011 and as a function of its membership in the Hotel Association of New York City, Inc.'s bargaining group. The relevant contract provision in this case is Article 52 of the IWA.

It is further undisputed that beginning in March 2020 the impact of the coronavirus pandemic on the hospitality industry in the Greater New York and New Jersey area was devastating. The fears caused by the spread of the disease coupled with government mandated travel bans and restrictions and the State and City of New York stay at home orders resulted in massive cancellations of booked reservations and caused hotels' occupancies to shrink to historic lows. In the face of this catastrophe, the Hotel Industry suffered a massive amount of hotel closures and layoffs of most of its unionized hotel workforce. Most destructive to the Hotel Industry was the uncertainty of how long the crippling effect of the pandemic would have on the hospitality market. Most, if not all, of the Hotels under the jurisdiction of the OIC were unaware of how long they would be closed. Dias confirmed that the Hotel was in the same predicament.

The Hotel experienced massive cancellations of its room bookings, especially for March and beyond. As a veteran of the Hotel Industry, Dias averred that he had never seen such a destructive impact on hotel business. In his words, the pandemic's effect on the Hotel's business was "unprecedented".

Dias testified that he and others within the Hotel's organization were aware of the Chairperson's award issued on March 19, 2020 (IC Award #2020-20) in which he declared that hotel closures and resulting layoffs of an indefinite duration due to the coronavirus pandemic triggered certain obligations under Article 52 of the IWA. Dias further acknowledged that the Hotel did not usually have its attorneys send out closure and layoff notices. Yet, on March 24, 2020, the Hotel caused to have its counsel send an e-mail to Union General Counsel Richard Maroko that stated:

Rich - Please be advised that effective this Sunday March 29 Yotel NYC will be temporary closing as a result of the impact of the COVID-19 pandemic. A list of the bargaining unit employees who will be placed on layoff effective March 29th is attached. While the exact timeframe is unknown, we anticipate the closure to last through June 30. 2020. If the Hotel can restart full operations to normal business levels sooner it certainly will do so.

In an abundance of caution and without any admission of its applicability, Simone Noe (copies here) will be sending the union, employees and local state officials WARN Act notices.

We will keep the union posted of any further developments that come available.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY  10036
TEL: (212) 541-7212  FAX: (646) 992-8103

#2020-61
Yotel New York
July 16, 2020
Page 4 of 7

Please let us know if you would like to further discuss the effects of the closure on the bargaining unit employees.

It is undisputed that the Hotel has been closed from March 29 to date.[1]

With regard to the pandemic's effect on the Hotel's business, Dias testified that the travel restrictions and government lockdown and stay at home orders had a devastating effect on the Hotel's business. He estimated that 80% of the Hotel's business was from out of town travelers and approximately 40% of the Hotel's guests attended Broadway shows, which are shuttered through December 31, 2020. He was also aware of the governmental restrictions in March and didn't know when they would be loosened or lifted.[2]

Nevertheless, Dias maintained that when the Hotel arranged for its counsel to send out the March 24th closure notice, the Hotel anticipated or expected to re-open by July 1, 2020, because of its booked rooms to date and its forecast based upon historical data regarding the same monthly periods. However, he admitted that the Hotel was looking to re-open in August, but in no event later than September 8, 2020. He explained that September 8th was the more likely date as he heard other Hotel operators were targeting the same date and the Hotel Industry's business historically ramps up the week after Labor Day.

Dias stated that based upon the significant amount of cancellations of booked reservations not only from March through June, but also for July, the Hotel cancelled any remaining reservations. The documentary evidence confirmed the same. When pressed by Union counsel, Dias explained that when total booked room nights for a month fell below 4,000 for the month, it made no business sense for the Hotel to re-open for that month. He conceded that this pandemic was unprecedented and placed the Hotel and its ability to predict its business in "unchartered waters". He further conceded that, as such, the Hotel could not reply upon historical data in forecasting its business during the pandemic.

As relates to whether the Hotel expected to re-open by September 8th, Dias refused to answer Union counsel's question whether the Hotel could guarantee that it would re-open by September 8th. He was adamant, though, that the Hotel intended to re-open by that date. However, he admitted to Union counsel that if the total booked room nights for August and September 2020 did not improve to above 4000, as they are below that threshold now, then the Hotel would not re-open.

The testimony of Noe was brief. She testified that normally the Hotel does not have its attorneys send out any layoff notices. She further admitted that she had sent the e-mail

[1] The Hotel affirmed that it was not taking the position that its lodging of first responders/medical personnel during the pandemic in April and May 2020 was an opening or re-opening for purposes of Article 52.
[2] Dias testified at the July 6th hearing in this matter that he believed the travel restriction on incoming travelers from Europe and China had been lifted. Such belief is incorrect as the bans remain in place.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY  10036
TEL: (212) 541-7212  FAX: (646) 992-8103

#2020-61
Yotel New York
July 16, 2020
Page 5 of 7

admitted into evidence as Union Exhibit 20 in which she informed Hotel employees and Union Delegate Rene Gomez that:

> As of today's date, the hotel has its reservations open for operation as of July 1, 2020. We want nothing more to get the hotel up and running again. We have been working towards new SOPs to insure the safety of our crew and towards the opening.

> With that being said, there is no guarantee of that date as the situation is fluid.

> We will communicate out as decisions are made and feel free to check back with us at any time.

Hotel counsel admitted that this e-mail was not produced even though it fell within the scope of the Union's RFI.

### CONTENTIONS[3]

### THE UNION'S CONTENTIONS

The Union argues that the Hotel violated Article 52 of the IWA by failing to pay severance pay to those employees laid off as a result of the Hotel's closure and the necessary contributions to the HTC-HANYC Health Benefits Fund ("Fund") to cover four months of health and medical benefits. It argues that the same facts that were present in the case which led the Chairperson to issue Award #2020-20 are present in this case and even more. The Hotel, like the rest of the Hotel Industry, failed to set a closure of definite duration nor could it. As such, Article 52 was triggered and the Hotel should have paid severance pay and should have commenced making the necessary contributions to the Fund to pay for continued health and medical benefits for its employees, instead of placing them in harm's way during this deadly pandemic. The Union further argues that the Hotel's so called anticipation of re-opening after June 30th was a dodge by its attorneys to have the Hotel avoid a finding that Article 52 was triggered by its closing and that the Hotel did not nor could not have known when it was re-opening. The Union pointed out that the Hotel's new announcement that it might not re-open until September 8th was further proof that the Hotel did not intend to re-open for a period which should have triggered Article 52.

### THE HOTEL'S CONTENTIONS

The Hotel argues that the Chairperson lacks jurisdiction over this case since the Union is trying to enforce Award IC#2020-20 which is a final award and which is being challenged in court. Alternatively, the Hotel argues that Article 52 was not triggered since the layoffs of the employees was not permanent as it has not yet been six (6) months. Further, Award #2020-20 was not applicable to the Hotel as it had set a definite duration for closure and it was not the Union's or the Impartial Chairperson's role to second guess or question the business judgment of the Hotel.

---

[3] The statement of the parties' contentions is drawn from their opening and closing statements.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (646) 992-8103

#2020-61
Yotel New York
July 16, 2020
Page 6 of 7

## **DISCUSSION**

The Chairperson has carefully weighed and considered all of the evidence and arguments presented to him, even if not specifically discussed below.

I must first address the Hotel's argument that the Impartial Chairperson lacks jurisdiction over this case and that the matter is not arbitrable. The Hotel is a party to the IWA and Article 26 thereof expressly provides that any issues regarding arbitrability shall be submitted to the Impartial Chairperson.

Contrary to the Hotel's thesis, the Union is not enforcing Award #2020-20 in this case. Both the Union and the Hotel stipulated that the issue submitted to me in this matter was "Did the Yotel New York ("Hotel") violate Article 52 of the IWA; and, if so, what shall be the remedy?". Therefore, this is the only issue before me. Second, as author of Award #2020-20, I am best suited to opine that the award was not a final award with regard to an individual hotel or employer's liability under Article 52 of the IWA or Article 55 of the Greater regional Industry-wide Agreement ("GRIWA"). Award #2020-20 addressed the request of the Union for a declaratory ruling on how an IWA provision should be interpreted and applied to a fact issue common to those hotels or employers in the Hotel Industry, who are parties to the IWA or GRIWA. As I pointed out therein, such request was not unusual as there have been several previous impartial Chairpersons decisions issued interpreting a provision of the IWA applicable to most hotels or employers.

In the industry-wide case in which the Chairperson issued Award #2020-20, I was asked to interpret Article 52 of the IWA and Article 55 of the GRIWA and how it should be applied to the unprecedented situation where hotels and/or employers were closed for an indeterminate period due to the crippling effects of the COID-19 pandemic. I found that, under such a situation, **certain, but not all,** severance obligations under Article 52 and Article 55 were triggered. In part, I drew upon the wisdom of previous Impartial Chairperson decisions and the inability of the Hotel Industry to determine how long their closures would last due to the impact of the COVID-19 pandemic. Specifically, I ruled that it was premature at that time to rule that severance payments to employees were required. I specifically, noted, that either the Union or an individual employer could submit whether Article 52 or 55 applied to an individual employer's circumstances. Such is the instant case brought by the Union here.

As to the merits of the case, as I did in Award #2020-20, I must reject the Hotel's argument that Article 52 was not triggered by its closure inasmuch as it has not lasted six (6) months. Nowhere in Article 52 is there any mention of six (6) months as a basis upon which Article 52's severance obligations are triggered. Further, while fellow Impartial Chairpersons and even the Union have used six (6) months as a useful general rule of thumb, it is not a bright line rule. Impartial Chairpersons, instead, should review the circumstances of each hotel closing and determine if it will be or is of sufficient duration to trigger Article 52 obligations.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (646) 992-8103

#2020-61
Yotel New York
July 16, 2020
Page 7 of 7

In this case, as a factual matter, I find the Hotel has evidenced no clear intention to re-open, a burden it carried. Instead, the Hotel only offered vague and conflicting statements that to the Chairperson were nothing more than a sham attempt to avoid Article 52. Further, it offered no evidence of health and safety protocols promulgated and given to employees or that it had actually purchased PPE for its employees and guests. My conclusion is also supported by the fact that the Hotel did not offer any Impartial Chairperson decisions or other arbitral authority that the Chairperson's decision in Award #2020-20 was erroneous or should be reconsidered.

Further, its pronouncement that its closure would only last through June 30, 2020 does not save it from a finding that Article 52 was triggered. While I agree with the Hotel that it is not the Impartial Chairperson's role to second guess or substitute its own judgment for the Hotel's business decision, I also note that I have repeatedly ruled in prior awards that inherent in every collective bargaining agreement is the obligation of both the union and employer to exercise their rights and satisfy their contractual obligations in good faith. In this case, for the reasons expressed, I find that the Hotel acted in bad faith by claiming that it anticipated or expected to open by July 1, 2020.

Such conclusion is buttressed by the Hotel's own announcement that its supposed predicted re-opening of July 1st would not occur until September 8th, four months later and a few weeks shy of six months from the layoff of the Hotel employees. Moreover, the Hotel was aware of Award #2020-20 when it had counsel draft its March 24th closure notice claiming its closure was anticipated through June 30th.

I find that the Hotel's severance obligations under Article 52 were triggered upon my finding that the Hotel has no intention of re-opening prior to when Article 52 would apply and order the Hotel to pay severance pay and severance contributions to the Fund as prescribed by Article 52 of the IWA. I reserve and retain jurisdiction on whether the Hotel should be required to pay the 15% penalty provided for under Article 26 of the IWA.

It is so ordered.

Dated:      July 16, 2020
New York, New York

ELLIOTT SHRIFTMAN, under the penalties of perjury, duly affirms that he is the arbitrator described herein and that he executed the foregoing instrument.

IMPARTIAL CHAIRPERSON