UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

MP BEDFORD PROPERTY LLC,

                Petitioner,

       v.

NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO,

                Respondent.

_____

Civil Action No. 20-cv-9050-JSR

**MEMORANDUM OF LAW IN SUPPORT OF UNION'S
MOTION TO DISMISS, AND ALTERNATIVELY,
IN OPPOSITION TO PETITIONER'S MOTION TO
VACATE LABOR ARBITRATION AWARDS**

PITTA LLP
Barry N. Saltzman
(bsaltzman@pittalaw.com)
Andrew D. Midgen
(amidgen@pittalaw.com)
120 Broadway, 28th Floor
New York, NY  10271
Telephone:  212-652-3890
Facsimile:  212-652-3891

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. ii

FACTS ........................................................................................................ 2

    Relevant IWA Terms ............................................................................. 2

    Recent Arbitral Precedent ...................................................................... 3

    Award No. 2020-75 (the "Industry Award") ........................................... 4

    The Renwick Award ............................................................................... 5

    Post Award Developments and Contingencies ........................................ 6

ARGUMENT ............................................................................................... 8

I.     THE COURT LACKS JURISDICTION OVER THE AMENDED PETITION ......... 8

    A.    The Challenged Awards Are Not Final as to Renwick ...................... 8

    B.    Functus Officio Does Not Bar Ongoing OIC Proceedings ............... 11

    C.    The Petition Is Moot ...................................................................... 14

II.    ALTERNATIVELY, THE AWARDS MAY NOT BE VACATED ........................... 15

    A.    LMRA § 301 Strongly Disfavors Vacatur ....................................... 15

    B.    The Awards Draw Their Essence From the IWA ............................. 17

    C.    Petitioner Fails Its High Burden for Vacatur .................................. 19

III.    "EVIDENT PARTIALITY" DOES NOT APPLY
       AS A MATTER OF FACT OR LAW .................................................... 23

CONCLUSION ............................................................................................. 25

{00680746-2}

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*Cases*

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*,
    492 F.3d 132 (2d Cir. 2007)...................................................................................... 24

*Bailey Shipping Ltd. v. Am. Bureau of Shipping*,
    2014 WL 1282504 (S.D.N.Y. Mar. 28, 2014) ......................................................... 14

*Barbier v. Shearson Lehman Hutton Inc.*,
    948 F.2d 117 (2d Cir. 1991)...................................................................................... 22

*Chelsea Grand, LLC v. New York Hotel & Motel Trades Council, AFL-CIO*,
    729 F. App'x 33 (2d Cir. 2018) .......................................................................... 12, 16

*Concourse Assocs. v. Fishman*,
    399 F.3d 524 (2d Cir. 2005)...................................................................................... 22

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006)........................................................................................ 19

*Elevator Indus. Ass'n, Inc. v. Local 3, I.B.E.W., A.F.L.-C.I.O.*,
    1985 WL 1093 (S.D.N.Y. Apr. 26, 1985) ................................................................. 9

*Emilio v. Sprint Spectrum L.P.*,
    2014 WL 902564 (S.D.N.Y. Feb. 11, 2014).............................................................. 19

*Employers' Surplus Lines Ins. Co. v. Glob. Reinsurance Corp.*,
    2008 WL 337317 (S.D.N.Y. Feb. 6, 2008) ......................................................... 12, 14

*Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*,
    909 F.3d 544 (2d Cir. 2018)...................................................................................... 13

*Goldman v. Architectural Iron Co.*,
    306 F.3d 1214 (2d Cir. 2002).................................................................................... 19

*Greater New York Health Care Facilities Ass'n v. Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union*,
    1984 WL 405 (S.D.N.Y. May 11, 1984) .................................................................... 9

*Hotel Ass'n of New York City, Inc. v. New York Hotel & Motel Trades Council, AFL-CIO*,
    1996 WL 393562 (S.D.N.Y. July 15, 1996) ............................................................. 15

*Hotel Greystone Corp. v. New York Hotel and Motel Trades Council, AFL-CIO*,
    902 F. Supp. 482 (S.D.N.Y. 1995) ...................................................................... 11, 12

ii

*In re Arbitration Between Millicom Int'l V N.V. & Motorola, Inc., Proempres Panama, S.A.,*
     2002 WL 472042 (S.D.N.Y. Mar. 28, 2002) .......................................................... 16

*In re Kurtzman,*
     194 F.3d 54 (2d Cir. 1999).................................................................................. 14

*Johnson v. National Football League Players Assn.,*
     2018 WL 8188558 (S.D.N.Y. Oct. 3, 2018) .................................................... 23, 24

*Keymer v. Mgmt. Recruiters Int'l, Inc.,*
     169 F.3d 501 (8th Cir. 1999) .............................................................................. 22

*Leed Architectural Prods., Inc. v. United Steelworkers of America,*
     916 F.2d 63 (2d Cir. 1990).................................................................................. 22

*Local 814, Int'l Bhd. of Teamsters v. Sotheby's, Inc.,*
     665 F. Supp. 1089 (S.D.N.Y. 1987).................................................................... 22

*Mason Tenders Dist. Council of Greater New York & Long Island v. CAC of New York, Inc.,*
     46 F. Supp. 3d 432 (S.D.N.Y. 2014).................................................................... 9

*Matter of N.Y. Hotel & Motel Trades Council, AFL-CIO v. Hotel Ass'n of N.Y. City, Inc.,*
     1993 WL 485560 (S.D.N.Y. Nov. 24, 1993) .................................................. 16, 19

*Melun Indus., Inc. v. Strange,*
     898 F. Sup. 990 (S.D.N.Y. 1990) ...................................................................... 22

*Michaels v. Mariforum Shipping, S. A.,*
     624 F.2d 411 (2d Cir. 1980)................................................................................ 8

*Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.,*
     2009 WL 3169973 (S.D.N.Y. Sept. 29, 2009)...................................................... 9

*N.Y. City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of*
     *Wall-Ceiling & Carpentry Indus. of N.Y.,* Inc.,
     826 F.3d 611 (2d Cir. 2016)........................................................................ 16, 17, 19

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,*
     820 F.3d 527 (2d Cir. 2016).......................................................................... 15, 17, 23

*Neshgold LP v. New York Hotel & Motel Trades Council, AFL-CIO,*
     2013 WL 5298332 (S.D.N.Y. Sept. 19, 2013)...................................................... 16

*New York Hotel and Motel Trades Council, AFL-CIO v. Hotel St. George,*
     988 F.Supp. 770 (S.D.N.Y. 1997) ...................................................................... 12

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.,*
     2005 WL 1661093 (E.D.N.Y. July 14, 2005)...................................................... 24

{00680746-2}

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,*
   497 F.3d 133 (2d Cir. 2007) ................................................................................. 22

*SH Tankers Ltd. v. Koch Shipping Inc.,*
   2012 WL 2357314 (S.D.N.Y. June 19, 2012) ........................................................ 14

*Tinaway v. Merrill Lynch & Co.,*
   658 F. Supp. 576 (S.D.N.Y. 1987) ......................................................................... 24

*Torrington Co. v. Metal Prod. Workers Union Local 1645*
   362 F.2d 677 (2d Cir. 1966) ................................................................................... 22

*United Bhd. of Carpenters v. Tappan Zee Constructors, LLC,*
   2015 WL 10861108 (S.D.N.Y. Mar. 25, 2015) ............................................. 9, 13, 14

*United Paperworks Int'l Union v. Misco, Inc.,*
   484 U.S. 29 (1987) ............................................................................. 15, 16, 19, 23

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.,*
   363 U.S. 593 (1960) ............................................................................................... 16

*United Steelworkers v. Warrior & Gulf Navigation Co.,*
   363 U.S. 574 (1960) ....................................................................................... 15, 23

*Westerbeke Corp. v. Daihatsu Motor Co.,*
   304 F.3d 200 (2d Cir. 2002) ................................................................................... 17

<u>Rules</u>

Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ...................................... 1

{00680746-2}

The New York Hotel & Motel Trades Council, AFL-CIO ("Respondent" or "Union") submits this Memorandum of Law and accompanying Declaration in support of its motion to dismiss the Amended Petition ("Petition") pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure and in opposition to the motion of MP Bedford Property LLC d/b/a Renwick Hotel ("Petitioner, "Renwick" or "Hotel") to vacate two arbitration awards (the "Awards") issued by the Office of the Impartial Chairperson of the Hotel Industry of the City of New York ("OIC").

Award 2020-75 (the "Industry Award") applies (i) Article 52 of the Industry Wide Agreement ("IWA") between the Union and the Hotel Association of New York City, Inc. ("Hotel Association") to provide severance benefits to employees laid off by hotels closed for indefinite duration because of COVID-19 and (ii) IWA Schedule B to maintain health care benefits during a pandemic. Award 2020-100 (the "Renwick Award ") applied these IWA provisions to the Hotel.

The Court lacks jurisdiction over the Petition inasmuch as the Awards are not final as to Petitioner. The Industry Award nowhere mentions Bedford or the Renwick, determines no dollar amount due from Petitioner and specifically invites all hotels, including the Renwick, to present their particular facts and circumstances to the industry arbitrator. The Renwick Award likewise expressly leaves open questions of liability and damages. Significantly, both Awards proceed on Petitioner's premise that the Hotel is only temporarily closed for undeterminable duration due to COVID-19. However, recent events indicate that, to the contrary, the Hotel may be permanently closed and may be converting to a homeless shelter. This triggers wholly different provisions of the IWA governing conversions to residential use in Article 57 and successorship in Article 59, neither considered in the Awards. Accordingly, the Union has moved the OIC for reconsideration of the Awards, and Renwick is currently arbitrating these issues before the OIC. Awards actively reopened and being reconsidered by the arbitrator cannot be final.

In any event, time and again in every argument, Petitioner attacks the Awards only because Renwick disagrees with the arbitrator's construction of the key terms and provisions of IWA Article 52 and Schedule B.  Renwick thereby concedes the case.  Contract construction is for the arbitrator, as covenanted by the parties in the IWA and as mandated by federal labor law.  Should the Court reach the merits, which it should not, Petitioner's motion should be denied since the arbitrator drew his Award from his construction of specified contract terms, supported by those terms, precedent and industry practice.

## FACTS

The Union represents over 35,000 workers employed in the hotel and hospitality industry of the greater New York City area.  Terms and conditions of employment for workers represented by the Union in New York City are negotiated and governed by the IWA between the Union and the Hotel Association.  Petitioner is an employer bound to the IWA.

**Relevant IWA Terms**

The IWA, at Article 26(A), establishes the broadest possible arbitration language, providing in relevant part:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto.  *Any questions regarding arbitrability, substantive, procedural or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.*

Doc. 20, at 34 (emphasis added).

The Union and Hotel Association, through the Hotel Trades Council and Hotel Association of New York City, Inc. Health Benefits Fund ("Health Benefits Fund"), have established health

2

centers (the "Health Centers"), which provide comprehensive health care to Union members and their families without deductibles or co-pays.  Bokerman Decl. ¶ 5.  Schedule B(3)(D) provides that the Harlem and Brooklyn centers are "essential."  Doc. 20 at 103.  The Health Centers are funded entirely by employer contributions to the Health Benefits Fund as a percentage of wages under IWA Article 33 and Schedule B(3).  Doc. 20 at 43, 101-03.  To ensure continued coverage and benefits under any circumstances, Schedule B(3)(A) provides, in relevant part, that "in no event shall any benefit, eligibility, or coverage be reduced for any reason absent signed agreement by the parties to the contrary."  Doc. 20 at 102.

IWA Article 52 provides severance pay and benefits contributions for employees suffering "termination resulting from the closing of a hotel."  Doc. 20 at 57.  For decades, by the practice and agreement of the Union and Hotel Association, the additional benefit contributions have been allocated exclusively to the Health Benefits Fund to provide four (4) months' healthcare for out-of-work employees.   Bokerman Decl. ¶ 9.

**Recent Arbitral Precedent**

In March 2020, COVID-19 shut down the hotel industry of New York City and environs.  *See* Bokerman Decl. ¶ 12.  Unable to agree whether COVID-19 closures and layoffs of indeterminable length triggered severance obligations under IWA Article 52, the Union and the Hotel Association submitted the issue for decision to the OIC.  Bokerman Decl. ¶ 13

Impartial Chairperson ("IC") Elliott Shriftman parsed the language of IWA Article 52 into its component parts and purposes.  IC Award No. 2020-20, Doc. 20-1.  The IC ruled for the Hotel Association that employer severance wage obligations had not yet been triggered, observing that employees may be recalled in a few weeks.  Doc. 21-1, at 15-16.  However, IC Shriftman ruled that four months' contributions to the Health Benefits Fund had become due consistent with the

parties' purpose and practice of maintaining that period of healthcare coverage for laid off employees.  Doc. 21-1, at 16-17.

By petition filed May 12, 2020, Yotel New York moved to vacate Award 2020-20 on various grounds including that no health care contributions could be due because Yotel intended to reopen.  Bokerman Decl. ¶ 15; Petition to Vacate Arbitration Award, Doc. 1, No. 20-cv-03675-JSR (S.D.N.Y).  Following briefing but before decision, Yotel withdrew its petition and submitted to OIC arbitration.  Bokerman Decl. ¶ 16.  Upon the evidence and argument presented, the IC found Yotel owed severance pay and benefit contributions, based on the lack of bookings and reopening plans for the indeterminate future.  *Yotel New York*, IC Award No. 2020-61 (July 16, 2020), Bokerman Decl. ¶ 16, Ex. A.

### Award No. 2020-75 (the "Industry Award")

With contributions to cover employee healthcare ending, and no end to hotel closings in sight, the Union and Hotel Association again submitted their differences for decision to the OIC.  Bokerman Decl. ¶ 18.

Following hearing and argument, IC Shriftman issued the Industry Award, Award 2020-75, ruling that employers owed Article 52 severance pay to employees, relying on his holding in *Yotel New York* and the "mountain of undisputed evidence" wherein the parties and experts agreed "that it is unlikely employees will be recalled in any meaningful way for the foreseeable future. . . ."  Doc. 20-3, at 38-39.  However, in deference to employers, the arbitrator ruled that employers could make these severance payments over time through June, 2021 as the difference between unemployment benefits and accrued severance due each respective employee ("bridge payments"), rather than by lump sum.  Doc. 20-3, at 39-40.  The IC alternatively provided that employers were

4

"of course free to simply pay severance pursuant to the applicable contract, inclusive of funds contributions. . . ."  Doc. 20-3, at 39.

IC Shriftman construed the maintenance of benefits provisions of IWA Schedule B (3)(A), providing that "in no event shall any benefit, eligibility or coverage be reduced for any reason," as a separate obligation independent from Article 52.  Doc. 20-3, at 17, 41.  Based on this express language, the arbitrator found that closure of two health centers, a smaller network and large out of area copays constituted a reduction in benefits triggering employer contributions under Schedule B.  Doc. 20-3, at 15-18, 41.  However, rather than adopting the Union's damage calculations of $165 million, the IC held a lesser amount of October, November and December contributions due from employers sufficient under Schedule B.  Doc. 20-3, at 42.  For January forward, the Impartial Chairperson accepted the employers' position for Fund cutbacks.  Doc. 20-3, at 42.  The IC excused employers from this part of the order if they had complied with Award 2020-20 and paid severance in a lump sum, inclusive of health fund contributions.  Doc. 20-3, at 42.  He invited employers and the Union to bring before him particular facts and circumstances that might affect his award.  Doc. 20-3, at 41, 42.

**The Renwick Award**

Renwick closed hotel operations on or about March 29, 2020, and laid off its Union-represented workers.  Bokerman Decl. ¶ 23.  To date Renwick remains closed and all or most of the Hotel's Union represented employees remain on layoff.  Bokerman Decl. ¶ 24.  Renwick has no definite reopening or recall plans.  Bokerman Decl. ¶ 25; *See* Yantz Decl. ¶9, Doc. 19.  The Union commenced arbitration at the OIC against Renwick and the Hotel's management company Highgate Hotels LP ("Highgate") as to the Hotel's obligations.  Bokerman Decl. ¶ 26.

Prior to hearing, the Union considered claims under IWA Articles 57 and 59 based on reports that the Hotel would be converting to a homeless shelter residential use.  Bokerman Decl.

¶ 27, Ex. B.  The Union did not proceed on Article 57 and 59 claims, but proceeded solely as if the Hotel was temporarily closed for indefinite term, because Renwick labor counsel denied the reports and the attorneys for the Owner of the Renwick Hotel served a "cease and desist" letter on other parties for asserting what he condemned as false allegations.  Bokerman Decl. ¶ 28, Exs. C, D.  Specifically, Renwick rejected the Union's Request for Information ("RFI"), as "irrelevant" and "false."  Bokerman Decl. ¶ 28, Ex. D.

The Union, Renwick and Highgate submitted evidence and argument as they wished to IC Shriftman at hearing on November 16, 2020 and thereafter until November 30, 2020.  Bokerman Decl. ¶ 29.  On December 16, 2020, IC Shriftman issued Award 2020-100 finding that the "Hotel's layoff of its employees for an indeterminate period constitutes a 'termination from a closing' that triggers the Hotel's obligation under Article 52 to pay severance pay."  Doc. 20-6, at 6.  He further held that Renwick had provided no reason why it, as distinguished from every other IWA hotel, should not comply with the Industry Award "in satisfaction of its maintenance of benefits obligations under Schedule B of the IWA."  Doc. 20-6, at 7.  IC Shriftman reiterated that "[c]onsistent with IC Award #2020-75 and 80, the Hotel may elect what type of payments it desires to make with respect to the payments to the employees and the contributions to the Health Fund."  Doc. 20-6, at 7.  Finally, IC Shriftman expressly retained jurisdiction on damages, relief and the Union's WARN Act claims.  Doc. 20-6, at 7.

**Post Award Developments and Contingencies**

On December 16, 2020, Heitman Credit Acquisition XV, LLC ("Heitman"), a secured lender to Bedford, filed a Verified Complaint for a foreclosure action (the "Foreclosure Complaint") in the Supreme Court of the State of New York, New York County.  Bokerman Decl. ¶ 30, Ex. E.  According to the Foreclosure Complaint, Bedford has been in distress and in breach of its loan provisions since at least April 2020 (Ex. E, at ¶¶ 22, 23), Heitman has the legal right to

6

seize and totally control the Hotel through a Receiver (Ex. E, at ¶¶ 60, 61, 34, 99) and Heitman seeks to do so for its own use and benefit to which Bedford has no legal defense.  (Ex. E, at ¶¶ 77, Wherefore provisions).

As a result of the above, the legal obligations of Renwick under the IWA are in flux. Bokerman Decl. ¶ 31.  It is unclear whether the Hotel falls within the reasoning of Award 2020-75 at all, whether Award 2020-100 is based on a reality that does not exist, whether the Hotel is permanently closed and/or, if it is, whether converting to non-residential use as a homeless shelter or otherwise.  Bokerman Decl. ¶ 31.  Consequently, by letter dated December 22, 2020, the Union requested reconsideration of Award 2020-100, whose premises appear erroneous or uncertain as well as responses to its RFI and adjudication of issues left undecided in the Award, such as violation of the WARN Act notice requirements, the form and amount of any severance payments, and additional damages.  Bokerman Decl. ¶ 32, Ex. F, H.  On December 29, 2020, Impartial Chairman Shriftman heard arguments and received evidence from the Union, Renwick and management company Highgate, ruled that Renwick must now respond to the Union's RFI, and continued the case to a new hearing on January 11, 2021 for further proceedings.  Bokerman Decl. ¶ 33, Ex. G.

On January 6, 2021, Highgate agreed to pay severance amounts and Health Benefit Fund contributions in satisfaction of those obligations under the Awards 2020-75 and 100.  Bokerman Decl. ¶ 35.  The Union has agreed.  Bokerman Decl. ¶ 35.  Renwick has refused to settle or withdraw its action.  Bokerman Decl. ¶ 35.

**ARGUMENT**

**I.**

**THE COURT LACKS JURISDICTION OVER THE AMENDED PETITION**

**A.      The Challenged Awards Are Not Final as to Renwick**

Courts can vacate only final arbitration awards.  The Court lacks jurisdiction to consider Renwick's premature Petition because the Awards leave open Petitioner's actual damages due, WARN Act liability, and liability and damages under Articles 57 and 59, all now actively before the OIC in ongoing proceedings.  Accordingly, the Petition should be dismissed.

*Michaels v. Mariforum Shipping, S. A.*, established the principle that courts lack jurisdiction to review non-final awards.  624 F.2d 411 (2d Cir. 1980).  In that case, the arbitration panel decided several but not all counterclaims, deferred decision on another claim, and never decided damages in any claim.  *Id*. at 412-13.  The losing party on the decided claims moved to vacate those decisions.  *Id*. at 413.  The Court of Appeals ruled "the court erred in reaching the merits of these claims and in following any course other than dismissal of the petition." *Id.* at 414.  Defining "final," the Court of Appeals explained, "an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them."  *Id*. at 413.  Moreover . . . the award did not finally dispose of any of the claims submitted, since it left open the question of damages. . . ." *Id*. at 414.  Citing the policy considerations of arbitration to conserve the time and resources of both the courts and parties, the Court cautioned against motions for court intervention during ongoing arbitration proceedings.  *Id*. at 414-15.

The Second Circuit's admonition rings especially loud when applied to ongoing labor disputes and arbitration.  Close to our case, an award which determined the issue of an employer association but left individual employer questions for future awards failed finality and was

dismissed.  *Elevator Indus. Ass'n, Inc. v. Local 3, I.B.E.W., A.F.L.-C.I.O.,* 1985 WL 1093 (S.D.N.Y. Apr. 26, 1985); *See also Greater New York Health Care Facilities Ass'n v. Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union*, 1984 WL 405 (S.D.N.Y. May 11, 1984) (action dismissed where arbitrator intended further hearings).  More recently in *United Bhd. of Carpenters v. Tappan Zee Constructors, LLC*, Judge Carter declined to address a first award as not final because the labor agreement and parties expected follow up efforts to resolve all issues, awaiting the second award which the court confirmed.  2015 WL 10861108 (S.D.N.Y. Mar. 25, 2015), *aff'd*, 804 F.3d 270 (2d Cir. 2015).  Similarly applying *Michaels*, Judge Ramos dismissed as not final an action to vacate a labor award of liability lacking a determination of damages or identifying the liable party.  *Mason Tenders Dist. Council of Greater New York & Long Island v. CAC of New York, Inc*., 46 F. Supp. 3d 432, 433 (S.D.N.Y. 2014); *See also Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*, 2009 WL 3169973 (S.D.N.Y. Sept. 29, 2009) (Judge Koeltl dismisses cross actions to vacate or confirm where parties' obligations need further litigation.)

Awards 2020-75 and 2020-100 clearly lack finality under any of these criteria.

First, the arbitrator could not have decided nor intended to decide all the issues in the parties' dispute inasmuch as the parties are currently before the Impartial Chairperson on these issues.  From inception, the dispute turns on the meaning of "closing" in the IWA – whether permanent, temporary or in the gray area of indeterminate length.  Impartial Chairman Shriftman held hearing on December 29, 2020 on the issue of whether Award 2020-100 or 2020-75, both concerning temporary closures of undetermined length, applied to Renwick under its now known circumstances – plans for conversion to a homeless shelter plus a foreclosure action – or whether circumstances are governed under IWA Article 57 covering final closures due to conversion from hotel use.  Bokerman Decl. ¶ 33.  These issues must be determined now.  Indeed, Chairman

Shriftman granted enforcement of the Union's RFI to ascertain the facts underpinning any final decision.  Bokerman Decl. ¶ 33.  Since the Chairman is continuing Renwick proceedings, he could not intend his Awards to be final, nor can they be as a matter of fact, law or policy.

Moreover, the Industry Award cannot be final by Renwick because it does not decide the dispute between the Union and Renwick in a manner not requiring further litigation.  In fact, the Industry Award does not mention Renwick at all, nor find it liable, and certainly fixes no damages for a violation by Renwick.  The Industry Award determines the meaning of IWA Article 52 and Schedule B in the context of current pandemic hotel closings generally.  How that declaratory meaning may or may not apply to a particular hotel like Renwick based on its circumstances, what relief or amount is due, if any, remains open, as Chairperson Shriftman expressly intended by twice inviting individual hotels and the Union to submit individual cases and by ordering compliance with the Unions RFI concerning conversion to residential use.  Doc. 20-3, at 41-42; Bokerman Decl. ¶ 33.  Similarly, the Renwick Award cannot be final because Impartial Chairperson Shriftman expressly retained jurisdiction over issues of both liability as to WARN notice and damages as to all claims.  Doc. 20-6, at 7.  Retention of jurisdiction over open issues precludes finality for judicial review.  Indeed, Petitioner is currently before the OIC on just these and other issues, in arbitration proceeding with decision now pending.  Bokerman Decl. ¶ 33, Exs. G, H.  These admittedly unresolved issues and ongoing arbitration proceedings confirm that the Awards are not final as to Petitioner.

The Second Circuit's admonition against judicial intervention during an ongoing arbitration process therefore rings loud and clear here.  As in *Michaels* and *Mason Tenders*, the Awards do not decide all relevant claims nor determine damages for Renwick.  As in *United Bhd. of Carpenters* and *Mitsubishi*, further hearings are expected to resolve these issues.  As in *Elevator*

10

*Indus. Ass'n* and *Greater New York Health Care Facilities Ass'n,* further hearings and arbitral decisions are needed to determine both liability and damages.  The OIC continues to hear evidence and will render a decision on all Renwick liability and damages, if any, under Article 52, 57, Schedule B or as the developing facts may direct.  Applying Judge Koeltl's rule of reason in *Mitsubishi,* Petitioner's insistence on federal court litigation should be dismissed as premature.

  **B. Functus Officio Does Not Bar Ongoing OIC Proceedings**

  Renwick's argument from "functus officio" runs directly into contrary precedent.  Functus officio generally in this Circuit, and specifically in this industry, does not restrict the broad arbitral powers granted to the Office of the Impartial Chairperson under IWA Article 26.  On the contrary, Article 26, binding both parties, grants the IC authority to revisit disputes of the parties as they develop even following a prior award.

  This Court established the above principal in *Hotel Greystone Corp. v. New York Hotel and Motel Trades Council, AFL-CIO,* 902 F. Supp. 482 (S.D.N.Y. 1995).  In that case, IC Drogin reconsidered a prior award, holding that the expansive arbitration language of then IWA Article 26 conferred authority that obliterated any *function officio* objections.  *Id*. at 484.  IC Drogin therefore reopened his prior award for reconsideration "after concluding that confusion had existed about the issue originally submitted for arbitration and that newly discovered evidence may now exist." *Id.*  Judge Kaplan emphatically agreed, quoting and adopting the arbitrators' reasoning at length and ordering the parties to proceed to the reopened arbitration.  *Id*.  "As evidenced by the longstanding industry practice, which is documented by the body of opinions by the ("OIC"), the parties agreed to permit the Impartial Chairman to reconsider awards for good cause," he explained.  *Id*. at 485.  Accordingly, "functus officio does not apply. . . ." *Id.*

In *New York Hotel and Motel Trades Council, AFL-CIO v. Hotel St. George*, Judge Mukasey agreed. 988 F.Supp. 770, 781-83 (S.D.N.Y. 1997). Noting Judge Posner's observation that the doctrine of *functus officio* "may not 'even be said to exist in labor arbitrations'" generally, Judge Mukasey held it certainly inapplicable to the OIC specifically, due to "the breadth of the arbitration clause." *Id*. at 781. Citing *Hotel Greystone,* Judge Mukasey stressed that even if the second award were deemed a reconsideration, the hotel "would be barred from objecting to the Arbitrator's authority to do so assuming that good cause were present for such reconsideration." *Id*. at 781 n.5. Further, "[i]t is not unfair to hold St. George liable for the 1997 Award given it had agreed specifically in Article 26 of the Agreement" to submit all disputes to OIC arbitration. *Id.* at 782-83; *see also Employers' Surplus Lines Ins. Co. v. Glob. Reinsurance Corp.*, 2008 WL 337317, at *9 (S.D.N.Y. Feb. 6, 2008) (citing *Hotel St. George* and IC procedure in rejecting functus officio). Accordingly, Judge Mukasey decried the hotel's "efforts to subvert that agreement and the labor arbitration process." 988 F.Supp. at 783.

In 2012, the parties to the IWA codified the already well established expansive power of the OIC by supplementing the broad provisions already at least twice confirmed by this Court. The parties added:

> *Any questions regarding arbitrability*, substantive, procedural or otherwise, or regarding the Impartial Chairpersons' *jurisdiction or authority*, shall be submitted to the Impartial Chairperson in accordance with this Article.

Bokerman Decl. ¶ 4; Doc. 20, at 34 (emphasis added). In full circle, binding court precedent become binding contract language through the knowing intent of the IWA hotels and the Union.

Not surprisingly, the courts of this Circuit continue to cite both *Hotel Greystone* and *Hotel St. George* with approval. *Chelsea Grand, LLC v. New York Hotel & Motel Trades Council, AFL-CIO,* 729 F. App'x 33, 37-38 (2d Cir. 2018) (approving the IC's authority over "procedural

questions" and "emerging events . . . in keeping with the industrial policy in labor arbitration");
*Tappan Zee Constructors*, 2015 WL 10861108, at **7-8 (citing and applying Judge Posner and
*Greystone Hotel* for arbitral authority to reconsider).

Indeed, the Second Circuit recently joined sister Circuits "in recognizing an exception to
*functus officio* whereas arbitral award fails to address a contingency that later arises or when the
award is susceptible to more than one interpretation" even where the award seems complete, "but
proves to be ambiguous in its scope and implementation." *Gen. Re Life Corp. v. Lincoln Nat'l Life
Ins. Co.*, 909 F.3d 544, 548-49 (2d Cir. 2018) (citations omitted).  This rule echoes *Greystone*, *St.
George*¸ and their progeny.  This rule should be applied here, for all the above reasons, and because
Petitioner's substantive arguments boil down to nothing more than alternative interpretations or
ambiguity as to the Awards' scope and implementation.

Here, all of arbitral and judicial considerations reject *functus officio* and mandate
continuing OIC proceedings.  Renwick is undisputedly bound to the IWA, including the original
and expanded 2012 Article 26 arbitration authority long held to supplant any notions of *functus
officio* and to authorize ongoing OIC arbitrations.  Here, events are still emerging, including efforts
to convert the Hotel to homeless shelter and legal proceedings to foreclose on the Hotel.  Here, the
new evidence on these issues needs to be explored and considered by the arbitrator.  Here, there
exists confusion as to whether IWA Article 52 or Article 57 governs, whether the hotel is
permanently or temporarily closed, and if permanent, whether due to COVID, foreclosure or
conversion.  None of these facts nor issues were decided to date by the Arbitrator, but all need to
be.  In any event, Award 2020-75 does not address Renwick's particular circumstances, or liability
or damages at all, and even Award 2020-100 leaves WARN liability and all damages unanswered
pending the IC's retained jurisdiction and future decision.  These gaping questions clearly invoke

13

judicial policy against interference in ongoing arbitration proceedings and in favor of conserving judicial resources, avoiding delay and expense.

And such Circuit authority means even more here.   Courts regularly recognize the overlap between doctrines of *functus officio* and the court lack of jurisdiction over non-final awards. *Tappan Zee Constructors*, 2015 WL 10861108, at \*\*6-11 (deciding jurisdiction in light of *functus officio*); *Bailey Shipping Ltd. v. Am. Bureau of Shipping,* 2014 WL 1282504, at \*4 n.5 (S.D.N.Y. Mar. 28, 2014) ("The Second Circuit has explained that 'the finality of an arbitral ruling must be assessed in light of the functus officio doctrine'. . . ."); *SH Tankers Ltd. v. Koch Shipping Inc.,* 2012 WL 2357314, at \*5 (S.D.N.Y. June 19, 2012) (same, "as long as the Panel may still revisit the Ruling, it is neither final nor subject to judicial review"); *Glob. Reinsurance Corp.*, 2008 WL 337317, at \*4 (same, "Applying logic . . . if an arbitrator is not *functus officio* . . . then the interim award is not subject to judicial review").   It follows then, as Judges Nathan and Baer and others have noted, since the parties to the IWA have consented to continuing OIC jurisdiction over both awards and emerging events, they have contractually disclaimed court jurisdiction over the IC's continuing proceedings reconsidering prior awards and assessing developing events. Accordingly, the Union's motion to dismiss should be granted.

## C.    The Petition Is Moot

The Petition must also be dismissed because the action is moot.   "When a case becomes moot, the federal courts 'lack[ ] subject matter jurisdiction over the action'" which must be dismissed.  *In re Kurtzman,* 194 F.3d 54, 58 (2d Cir. 1999) (dismissing action on appeal because "we cannot provide any effectual relief . . . and any decision we issued would be purely an advisory opinion").  As in *Kurtzman,* the Petition is moot because the Court cannot provide effectual relief to Renwick relating to the Union.  In pursuing severance pay and benefit fund contributions on

behalf of the Hotel's laid off employees, the Union and management company Highgate agreed that Highgate would pay amounts in satisfaction of those Hotel obligations under the IWA as applied by the Awards.  Bokerman Decl. ¶ 35.  Accordingly, there is nothing more for the Court to order with respect to the claims of this action and the Petition should be dismissed.

## II.

### ALTERNATIVELY, THE AWARDS MAY NOT BE VACATED

Should the Court decide to consider the merits, which it should not, the Awards should not be vacated because Impartial Chairperson Shriftman carefully grounded his holdings and relief in the expansive provisions of the IWA as well as industry practice and awards validating the OIC's vital, longstanding authority as arbiter for New York City's hotel industry.

### A.      LMRA § 301 Strongly Disfavors Vacatur

Case law under LMRA Section 301 establishes bedrock federal labor policy "promoting 'industrial stabilization through the collective bargaining agreement,' with particular emphasis on private arbitration. . . ."  *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,* 820 F.3d 527, 536 (2d Cir. 2016) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960)).  "Under this framework of self-government, the collective bargaining agreement is not just a contract, but 'a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.'"  *Id*. (quoting *Warrior*, 363 U.S. at 578)*.*  Arbitrators chosen for their "expertise in the particular business" bring their interpretation and judgment in applying "the 'industrial common law of the shop' to the various needs and desires of the parties," becoming "part and parcel of the ongoing process of collective bargaining." *Id.* (citing *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  In effectuating this process, arbitrators properly interpret both express and implied terms of the agreement, guided by a variety of sources, including prior industry practices and awards.  *Hotel Ass'n of New York City,*

*Inc. v. New York Hotel & Motel Trades Council, AFL-CIO*, 1996 WL 393562, at *3 (S.D.N.Y. July 15, 1996) (confirming award to fill in an IWA gap in accordance with arbitrator's perception of the parties' intent); *Matter of N.Y. Hotel & Motel Trades Council, AFL-CIO v. Hotel Ass'n of N.Y. City, Inc.*, 1993 WL 485560, at **6, 11 (S.D.N.Y. Nov. 24, 1993) (confirming award and applying the "wisdom" of industry practice and prior decisions).

Such federal labor policy favoring arbitration necessarily extends to arbitral remedies. *Misco*, 484 U.S. at 38 ("Where it is contemplated that the arbitrator will determine remedies . . . courts have no authority to disagree with his honest judgment in that respect."); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596-97 (1960) (judicial deference to arbitrators' expertise and judgment "is especially true when it comes to formulating remedies," requiring "flexibility in meeting a wide variety of situations. . . ."); *Chelsea Grand LLC*, 729 F. App'x at 39-40 (affirming district court confirmation of relief awarded by the arbitrator even if not requested by either party); *Neshgold LP v. New York Hotel & Motel Trades Council, AFL-CIO*, 2013 WL 5298332, **9, 10 (S.D.N.Y. Sept. 19, 2013) (confirming liability and remedy award); *In re Arbitration Between Millicom Int'l V N.V. & Motorola, Inc., Proempres Panama, S.A.*, 2002 WL 472042, at *6 (S.D.N.Y. Mar. 28, 2002) (arbitrators enjoy broad remedial discretion).

As emphasized by the Court of Appeals, "a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *N.Y. City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y., Inc.,* 826 F.3d 611, 618 (2d Cir. 2016)*.* The courts' "very limited" duty "is simply to determine 'whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement.'" *Id.* "[A]s long as 'the arbitrator was *even arguably* construing or applying the contract and acting within the scope of his

authority and did not ignore the plain language of the contract,' the award should ordinarily be confirmed." *Id.* (emphasis added). Indeed, courts confirm arbitration awards "if . . . able to discern any colorable justification for the arbitrator's judgment." *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 212 n.8 (2d Cir. 2002).

### B.   The Awards Draw Their Essence From the IWA

True to the above overwhelming authority, Impartial Chairperson Shriftman faced the challenge of COVID-19, balancing competing interests as "part and parcel of the ongoing process of collective bargaining." *Nat'l Football League Mgmt. Council*, 820 F.3d at 536.

As to Article 52 severance, the Impartial Chairperson needed to define and apply the term "closing of a hotel" under the unique circumstances of COVID-19. IWA Article 52 does not define "closing." Prior IC awards had defined "closing" to be "permanent," but defined "permanent" based on the facts and circumstances of the particular employer, eschewing any bright line, including a "useful" six-month rule of thumb. Award 2020-20, Doc. 20-1, at 15-16; Award 2020-61, Bokerman Decl. Ex. A, at 6. The Impartial Chairperson therefore applied this construction in the context of hotels being closed for operations due to COVID-19 without any definite plans of reopening. Award 2020-20, Doc. 20-1, at 15-16; Award 2020-61, Bokerman Decl. Ex. A, at 7; Award 2020-100, Doc. 20-6, at 6-7.

However, in *Yotel New York*, issued about four months later, the IC found Article 52 severance triggered because the employer was unable to demonstrate a definite plan to reopen. Award 2020-61, Bokerman Decl. Ex. A, at 7. Such construction makes sense, consistent with the purpose of severance pay since otherwise, an employer could completely eviscerate its severance pay obligations by simply stating it hopes that its closure would not be permanent, even if the hotel had no definite expectation or plans to reopen. In Award 2020-20 this construction favored the employers since hotels had not been closed long and the possibility existed that recall could happen

17

within mere weeks.  Doc. 21-1, at 15-16.  IC Shriftman applied the reasoning of these holdings in

the Industry and Renwick Awards, concluding that, based on "a mountain of undisputed evidence,"

the parties and the experts all agreed that reopening and recall would not occur in the foreseeable

future.  Doc. 20-3, at 38-39; Doc. 20-6, at 6.  As in *Yotel New York*, long-term indefinite closure

triggered severance pay to the employees.  However, in a concession to employers, the Impartial

Chairperson determined that employers could pay severance in "bridge payments" without the

requisite Article 52 health fund contributions.  Doc. 20-3, at 39-40; Doc. 20-6, at 7.  The Awards

thus apply Article 52 "closing" consistent with common sense meaning, parties' purpose and direct

arbitral precedent construing the term.

As to maintenance of benefits provided by the Health Benefits Fund, IC Shriftman noted

the IWA requirements of Schedule B to maintain the Fund as well as the IWA's express mandate

to "maintain all benefits currently provided by the Health Benefits Fund at no less than the current

eligibility and coverage and in no event shall any benefit, eligibility, or coverage be reduced for

any reason. . . ."  Doc. 20-3, at 17, 41.  Accordingly, crediting the Union's arguments regarding

shutdowns of health centers and other changes as reducing benefits, the Impartial Chairperson

ordered additional employer contributions for October, November and December to maintain

benefits in accordance with the express mandate of Schedule B(3), thereby giving meaning to

Schedule B(3).  Doc. 20-3, at 42-43.  Since Schedule B provides no amount or calculation, it fell

to the industry arbitrator to set the release.  IC Shriftman rejected the Union's demand of $165

million dollars and authorized implementation of the benefit cutbacks after December 2020.  Doc.

20-3, at 42.  And as another concession to employers, the IC excused maintenance of benefit

payments for employers that complied with Award 2020-20 and also paid Article 52 severance in

a lump sum, including fund contributions.  Doc. 20-3, at 42.  Reviewing Petitioner's individual

{00680746-2}

arguments in the Renwick Award, IC Shriftman found no reason why Renwick should not comply with the Industry Award "in satisfaction of its maintenance of benefits obligations under Schedule B of the IWA."  Doc. 20-6, at 7.

Far from merely "arguably" construing or applying the contract, IC Shriftman expressly construed and applied the governing IWA.  As required by Supreme Court precedent, the Impartial Chairman applied his expertise to answer the question of what the parties intended Article 52 and Schedule B to do on facts no one could have anticipated.  IC Shriftman drew on the language of those provisions, including practice, prior IC decisions and the detailed lengthy arguments by both the Union and the Hotel Association, the negotiators and drafters of the IWA.  Such reliance on contract language, party practice, and industry "common law," and backed by judicial approval, bars vacatur here.  *See Bhd. of Carpenters & Joiners of Am.,* 826 F.3d at 619 (court affirms arbitrator who applied party practice to ensure industrial stability).  That Petitioner, or even the Court, might reach a different conclusion, signifies nothing, because it is the arbitrator's judgment for which the parties bargained.  Since far more than "arguably construing or interpreting the contract" the courts have no authority to disagree with his honest judgment.  *Misco*, 484 U.S. at 38.  As stated by Justice Sotomayor years ago, no less binding today: "As the decisions of the Supreme Court and this Court inform me, I am without authority to limit the arbitrator and have him ignore such considerations."  *NYHTC*, 1993 WL 485560, at *6; *see also W. 63 Empire Assocs., LLC v. New York Hotel & Motel Trades Council*, 2009 U.S. Dist. LEXIS 60158, at **9-10 (S.D.N.Y. Mar. 31, 2009) (affirming award based on IWA and OIC decisions).

### C.   Petitioner Fails Its High Burden for Vacatur

A party seeking to vacate an arbitration award bears an exceedingly high burden.  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110-12 (2d Cir. 2006); *Goldman v. Architectural Iron Co*., 306 F.3d 1214, 1216 (2d Cir. 2002); *Emilio v. Sprint Spectrum L.P.*, 2014 WL 902564, at *4

(S.D.N.Y. Feb. 11, 2014), *aff'd*, 582 F. App'x 63 (2d Cir. 2014); *W. 63 Empire Assocs.*, 2009 U.S. Dist. LEXIS 60158, at \*\*6-7 (review is "severely limited" and *vacatur* requires a "high showing")*.*

Petitioner fails this burden. Initially, Renwick cannot challenge the Industry Award which is between the Union and Hotel Association. Renwick's challenge can only be to the Renwick Award particular to it. Nevertheless, Renwick contends that the Award "contradicts the plain language of the IWA" but immediately belies its argument by introducing rules of contract construction, thereby admitting that Article 52 "closing" requires interpretation. That is precisely what the Impartial Chairman did, interpreting "closing" not in terms of disembodied dictionaries or wooden maxims, but consistent with the parties' purposes, experience and practice. In citing *Yotel New York*, the IC reaffirmed his holdings that "closing" is defined not by a bright line rule but instead through a comprehensive review of the circumstances. This holding makes sense because the alternative would permit employers to avoid severance payments by merely professing a vague plan to reopen.

Renwick also alleges that the IC adopted the Union's argument that a layoff of at least six months is a permanent loss of employment. Doc. 18, at 7. The IC never reached such a conclusion, instead repeatedly rejecting bright lines in favor of more particularized review. Award 2020-75, Doc. 20-3, at 38-39 (citing Award 2020-61, at 6); Award 2020-100, Doc. 20-6, at 6; *see also* Award 2020-20, Doc. 20-1, at 15. IC Shriftman found severance warranted because, almost six months after Award 2020-20, everyone agreed that it was unlikely employees would be recalled in any meaningful way for the foreseeable future. Award 2020-75, Doc. 20-3, at 38-39; Award 2020-100, Doc. 20-6, at 7. He reached this determination based on industry projections and analysis from industry experts in the Industry Award and subsequently Renwick's individual circumstances. Award 2020-75, Doc. 20-3, at 38-39; Award 2020-100, Doc. 20-6, at 7. Far from

20

adopting a six month bright line, IC Shriftman applied his closure analysis in accordance with the OIC's fact-sensitive test.

Likewise, Renwick contends the Award contradicts Article 52 in awarding additional contributions under the maintenance of benefits provisions of Schedule B(3).  No such contradiction exists because the maintenance of benefits provisions of Schedule B exist independent of Article 52.  Doc. 20-3, at 17, 41.  Article 52 prescribes contributions for an individual hotel closure whereas Schedule B wisely protects against a massive industry downturn, such as COVID inflicted closures.  Here, Renwick's circumstances encompassed both liabilities.

Moreover, Renwick accepted Award 2020-20 and voluntarily paid Health Benefits Fund contributions thereunder.  *See* Bokerman Decl. ¶ 15.  Having accepted and fulfilled that obligation, Petitioner's objection is limited to the additional three months mandated by Award 2020-75, which the arbitrator properly derived from the Schedule B(3) maintenance of benefits.  Finally, even looking to the initial four months of Award 2020-20 which Petitioner accepted, the parties had agreed that the Article 52 contributions formula equated to four months, an agreement expressly provided for in Article 52 itself.  Indeed, Renwick concedes the four months rule in its 2014 Closing Agreement attached as Exhibit F to the Amended Petition, where, in paragraph 2, Renwick describes Article 52 contributions as "120 days of extended medical coverage".

Renwick also appears to misconstrue the Award as requiring payment of Article 52 health benefit fund contributions in excess of 25%.  While the IC permitted employers to make lump sum severance payments (including health benefit fund contributions) after having previously made benefit contributions pursuant to 2020-20, he did not require employers to do so.  The IC merely provided employers this concession/option as a means to avoid paying his maintenance of benefits order, which may result in a smaller financial burden for some employers.  Doc. 20-3, at 39-40.

21

However, IWA employers remain free to payout severance through bridge payments, thus avoiding any additional obligation to pay health benefit contributions under Article 52. Accordingly, IC Shriftman's concession to employers in no way abrogates the terms of Article 52, instead serving as an example of his broad remedial authority to mitigate payments owed by employers in catastrophic circumstances.

Petitioner's sparse citation of dated inapposite cases falls far short of the facts and reasoning of this case. Indeed, where not cited as boilerplate divorced from context, facts or policy, Petitioner's cases support confirmation. Thus, in *Melun Indus., Inc. v. Strange*, the arbitrator based his award on a period of time expressly outside his scope of construction under a narrow arbitration clause standing in sharp contrast to the IWA's broadest possible reach. 898 F. Sup. 990 (S.D.N.Y. 1990); *See also Barbier v. Shearson Lehman Hutton Inc.,* 948 F.2d 117 (2d Cir. 1991) (contract incorporated New York law which arbitrator violated); *Keymer v. Mgmt. Recruiters Int'l, Inc*., 169 F.3d 501 (8th Cir. 1999) (issue excluded by contract). Similarly, in *Leed Architectural Prods., Inc. v. United Steelworkers of America, Local 6674*, the arbitrator's remedy extended the employer's violation to the entire bargaining unit, thereby multiplying the violation. 916 F.2d 63 (2d Cir. 1990). In contrast, the Awards extend no wrong but properly construes IWA terms to determine the parties' rights as they submitted the issues to him. *Cf. 187 Concourse Assocs. v. Fishman*, 399 F.3d 524 (2d Cir. 2005) (arbitrator exceeded submission); *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133 (2d Cir. 2007) (same). The arbitrator mistakenly relied on a past practice in *Torrington Co. v. Metal Prod. Workers Union Local 1645*, because the employer had expressly revoked that practice prior to the parties dispute. 362 F.2d 677 (2d Cir. 1966); *See also Local 814, Int'l Bhd. of Teamsters v. Sotheby's, Inc.,* 665 F. Supp. 1089 (S.D.N.Y. 1987) (arbitrator did not consider contract terms at all). In our case, IC Shriftman correctly drew

22

on the wisdom of OIC precedent construing the very IWA terms in question which both the Union and Hotel Association cited to him, just as Justice Sotomayor had approved years before.

Thus, in all instances, IC Shriftman more than arguably construed the IWA, whatever other readings Petitioner may prefer.  Accordingly, the Awards should not be vacated.

## III.

### "EVIDENT PARTIALITY" DOES NOT
### APPLY AS A MATTER OF FACT OR LAW

Renwick's final grasp for *vacatur* citing "evident partially" only emphasizes the emptiness of Petitioner's arguments.

First, FAA concepts of "evident partiality" on which Petitioner wrongly relies run foreign to LMRA arbitration.  *Johnson v. National Football League Players Assn.*, 2018 WL 8188558, at *15 (S.D.N.Y. Oct. 3, 2018) ("The Second Circuit has held that '[t]he FAA does not apply to arbitrations ... conducted pursuant to the LMRA,'" rejecting fundamental fairness or evident partiality in LMRA context) (citing *Nat'l Football League Mgmt. Council*, 820 F.3d at 545 n.13), *aff'd*, 820 F. App'x 51 (2d Cir. 2020).  That is because, as explained in *Johnson*, "courts should be more deferential to arbitrators in the context of labor disputes than other commercial disputes' since under the FAA 'arbitration is the substitute for litigation,' while under the LMRA 'it is the substitute for industrial strife.'"  *Id*. at *15 (citations omitted).  The Awards here are not a one-shot substitute for litigation, but part of the industry's attempt to substitute broad arbitration for industrial strife in the face of unprecedented pandemic challenges.  *See Nat'l Football League Mgmt. Council*, 820 F.3d at 536 (quoting *Warrior*, 363 U.S. at 578 and citing *Misco*, 484 U.S. at 38).  The LMRA thus affords arbitrators more flexibility than the FAA needs to address.

Second, even if those concepts did apply, no evident partiality taints the Award.  The party seeking vacatur must prove evident partiality by "clear and convincing evidence" where a

23

reasonable person would have to conclude that the arbitrator was biased.  *Id*. at *16; *see also*

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 2005 WL 1661093, at *9 (E.D.N.Y. July 14, 2005)

("[a] showing of 'evident partiality' requires more than … speculation but an assessment of the

facts independent of adverse rulings), *aff'd,* 204 F. App'x 40 (2d Cir. 2006); *Cf. Applied Indus.*

*Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 136 (2d Cir. 2007) (fact

that arbitrator knew of conflict but did not disclose); *Tinaway v. Merrill Lynch & Co.,* 658 F. Supp.

576, 578 (S.D.N.Y. 1987) (arbitrator's award of damages without inferable basis).

As discussed above, bias is simply not a "have to" explanation for the Chairman's balanced

Awards.  The arbitrator's fidelity to the IWA lives in his every citation to its terms, expression of

party practice and reliance on OIC precedent, more than meeting the "even arguable" standard to

confirm an award, and therefore cannot support a claim of bias. Even more striking, the fact cannot

be ignored that the Impartial Chairman expressed sympathy for employers in his analysis and

Industry Award.  *See* Doc. 20-3, at 38.   Indeed, the IC expressly crafted installment "bridge

payments" as an alternative to lump sum severance at the employer's choice, reduced the amount

of the contributions to the Health Benefits Fund demanded by the Union and even permitted

reduction of benefits after December.  That the IC expressed concern for all industry participants

alike, while Renwick seeks to deny its laid off workers and their families healthcare coverage

during a pandemic, does not signify arbitral bias, alone or in context of the Awards.  Petitioner

fails to carry its high burden on this ground as well, and its motion to vacate should be denied.

24

## CONCLUSION

There is no need for the parties and Court to deplete limited resources in litigation when the parties are bound to resolve all disputes between them at binding arbitration now awaiting IC decision. In any event, the Awards derive their essence from the IWA provisions, purpose, practice and precedent. Accordingly, and for the reasons and authority set forth above and in the accompanying Declaration, the Petition to vacate the Award should be dismissed or denied, together with whatever further relief this Court deems fair and appropriate.

Dated: New York, New York
        January 8, 2021

Respectfully submitted,

PITTA LLP
*Attorneys for Respondent Union*

By: _____/s_____
    Barry N. Saltzman
    (bsaltzman@pittalaw.com)
    Andrew D. Midgen
    (amidgen@pittalaw.com)
    120 Broadway, 28th Floor
    New York, NY  10271
    Telephone:  212-652-3890
    Facsimile:  212-652-3891

{00680746-2}