IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MP Bedford Property LLC,<br><br>        Petitioner,<br><br>   v.<br><br>New York Hotel & Motel Trades Council, AFL-CIO,<br><br>        Respondent. | Civil Action No. 1:20-cv-09050-JSR |

**MEMORANDUM OF LAW IN RESPONSE TO RESPONDENT'S MOTION TO DISMISS AND REPLY IN SUPPORT OF AMENDED PETITION AND MOTION TO <u>VACATE ARBITRATION AWARD</u>**

PAUL ROSENBERG
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, N.Y. 10111
(212) 589-4299 (phone)
(212) 589-4201 (fax)
prosenberg@bakerlaw.com

ANDREW M. GROSSMAN
(admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1697 (phone)
(202) 861-1783 (fax)
agrossman@bakerlaw.com

**Table of Contents**

I. The Awards Must Be Vacated Because They Amount to Rough Industrial Justice Divorced from Contractual Right ........................................................................ 1

    A. The IC Ignored the Bargained-For Terms of the IWA ........................................ 1

    B. The IC Acted with "Evident Partiality" When He Issued the Awards ................................................................................................................. 3

II. The Union's Motion to Dismiss Should Be Denied Because the Awards Are Properly Subject to Judicial Review at This Time ..................................................... 4

    A. The Awards Are Final Because They Resolved All Claims and Determined Renwick's Legal Obligations .......................................................... 4

    B. The Controversy Is Not Moot Because the Court May Still Grant Effectual Relief to Renwick .................................................................................. 8

## Table of Authorities

*Applied Indus. Materials Corp. v. Ovalar Makien Ticaret Ve Sanayi, A.S.*,
   492 F.3d 132 (2d. Cir. 2007) ................................................................................................ 3

*Avis Rent a Car Sys., Inc. v. Garage Emps. Union, Local 272*,
   791 F.2d 22 (2d Cir. 1986) ..................................................................................................... 1

*Gen. Life Ins. Corp. v. Lincoln Nat' Life Ins. Co.*,
   909 F.3d 544 (2d Cir. 2018) ................................................................................................... 7

*Hotel Greystone Corp. v. New. York Hotel & Motel Trades Council, AFL-CIO*,
   902 F. Supp. 482 (S.D.N.Y. 1995) ......................................................................................... 7

*Johnson v. Nat'l Football League Players Ass'n*,
   2018 WL 8188558 (S.D.N.Y. Oct. 3, 2018) .......................................................................... 3

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
   567 U.S. 298 (2012) ................................................................................................................ 9

*Local 814, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen, & Helpers of America v. Sotheby's Inc.*,
   665 F.Supp. 1089 (S.D.N.Y. 1987) ....................................................................................... 3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................ 8

*Michaels v. Mariforum Shipping, S.A.*,
   624 F.2d 411 (2d Cir. 1980) ................................................................................................... 4

*Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*,
   2009 WL 3169973, (S.D.N.Y. Sept. 29, 2009) ..................................................................... 5

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*,
   820 F.3d 527 (2d Cir. 2016) ............................................................................................. 2, 3

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*,
   2005 WL 1661093 (E.D.N.Y. July 14, 2005) ....................................................................... 4

*N.Y. Hotel & Motel Trades Council, AFL-CIO v. Hotel St. George*,
   988 F.Supp. 770 (S.D.N.Y. 1997) ................................................................................ 5, 7, 8

*United Bhd. of Carpenters v. Tappan Zee Constructors, LLC*,
   2015 WL 10861108 (S.D.N.Y. Mar. 25, 2015) ..................................................................... 6

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
   484 U.S. 29 (1987) .............................................................................................................. 1, 3

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ................................................................................................................ 8

*United Steelworkers of America v. Enter. Wheel & Car Corp.*,
   363 U.S. 593 (1960) ................................................................................................................ 3

*Zeiler v. Deitsch*,
   500 F.3d 157 (2d Cir. 2007) ................................................................................................... 4

On September 11, 2020, the Impartial Chairperson ("IC") issued an arbitration award ("Award") imposing legal obligations on the Petitioner, MP Bedford Property LLC ("Renwick"). This Award suffers from substantive errors because, instead of interpreting the Industry Wide Collective Bargaining Agreement ("IWA"), it applied the IC's version of "rough industrial justice" to require Renwick to make payments not authorized by that agreement. After Renwick filed this suit challenging the Award, the Respondent, New York Hotel and Motel Trades Council, AFL-CIO (the "Union") requested that the IC issue a second award ("Second Award") for the same relief, which it did on December 2, 2020. The IC lacked the authority to do so, and its Second Award effectively rubberstamped the original Award, providing the same relief on the same basis. The Union does not seriously attempt to justify these awards under the IWA. Rather, it seeks to rewrite the IWA and hold Renwick liable for severance liability never contemplated by the agreement.

The Union raises two new arguments, but neither are persuasive. First, the Union's argument that the Awards are not final and fit for review whenever a party to the Award can seek reconsideration—which parties always can—would mean that no one could ever seek judicial review of an award under the IWA and is obviously wrong. Second, the Union argues that this petition is moot because of an agreement between the Union and a third party. But the Award still imposes a legal obligation on Renwick, thereby injuring Renwick, and therefore presents a live controversy.

I.  **The Awards Must Be Vacated Because They Amount to Rough Industrial Justice Divorced from Contractual Right**

A.  **The IC Ignored the Bargained-For Terms of the IWA**

The words of the IWA itself must be the basis of any award, *see Avis Rent a Car Sys., Inc. v. Garage Emps. Union, Local 272*, 791 F.2d 22, 24 (2d Cir. 1986), and the IC may not impose his own understanding of rough "industrial justice," *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987). The Union's only substantive response to Renwick's arguments on this point is that the IC has been consistent in his interpretation of severance

1

obligations, but a decision that makes up new legal obligations never contemplated by the parties in their contract does not draw its "essence" from that contract, and repeating that error does not remedy it.

First, the IC's award of "severance pay" is divorced from the language of the IWA, because the IWA requires a final (not temporary) closing, includes examples of terminations that would only occur permanently, and explicitly excluded a reference to any time period when a temporary closing may be considered permanent. Pet.Br. at 5–7. The IC's determination that most hotels did not have a definite date of reopening and recall, Op.Br. at 17, does not mean that the closings are permanent. Rather, all it means is that hotels like Renwick cannot predict when a once-in-a-century global pandemic will subside. But uncertainty is not the same as permanent closure, the only type of closure envisioned by Article 52. The Union offers that the IC did not adopt a six month "brightline" test, Op.Br. at 20–21, and that the IC has "consistently" interpreted the IWA this way in recent months. This misunderstands Renwick's argument: the issue is not that the IC has set a specific length of time as a "closure," but that he made a determination at all that a temporary closure may be regarded as a permanent one, which is found nowhere in the IWA. Additionally, this atextual interpretation of the IWA cannot promote the "industrial stabilization" it was meant to create, because parties now have no way of knowing if the IC will simply abandon the text of the IWA in future awards. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016).

Second, even if Article 52's severance obligation could be triggered, the IC implemented his own "rough industrial justice" by circumventing Article 52's limit on severance payments. Pet.Br at 8 (Article 52 severance liability is limited to "five days' pay for each year of service: four days to the employee and one day to the Health Benefits Fund"). Once again, the Union refuses to confront Renwick's argument, merely reciting (at 18–19) the words of Schedule B. Renwick and the Union agree that Schedule B requires employers to "maintain all benefits," *id.*, Pet.Br at 8, but the fundamental question is *who* Renwick must maintain

those benefits for. Under the bargained-for terms of the IWA, Article 33 and Schedule B indisputably apply only to those employees *currently working* at the hotel. But the IC's Awards try to fit a square peg into a round hole by applying Schedule B's obligation to workers who are *not* currently working. The IC has thereby invented new "maintenance of benefit obligations" Exhibit G at 6,[1] for Renwick to its laid-off employees. This is not "construing or applying the contract," *Misco*, 484 U.S. at 38, but rewriting it.[2] Therefore, like the arbitrator in *Local 814, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen, & Helpers of America v. Sotheby's Inc.*, 665 F.Supp. 1089, 1093 (S.D.N.Y. 1987), the IC here "confused or misunderstood" the agreement and "chose 'to dispense his own brand of industrial justice.'" (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

### B. The IC Acted with "Evident Partiality" When He Issued the Awards

Not only did the IC re-write Article 52 of the IWA, but he did so in such a way that compels the conclusion that the IC "was partial to one party to the arbitration," *Applied Indus. Materials Corp. v. Ovalar Makien Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (citation omitted). The Union's arguments confuse "fundamental fairness" and "evident partiality" under the FAA. Relying on authorities (at 23) that only reference "fundamental fairness," the Union fails to acknowledge that "federal courts have often looked to the FAA for guidance in labor arbitration cases," *Johnson v. Nat'l Football League Players Ass'n*, 2018 WL 8188558 at *15 (S.D.N.Y. Oct. 3, 2018). And the Union misrepresents *Johnson's* discussion, as well as the conclusion in *Nat'l Football League Management Council*, 820 F.3d at 548. The Second Circuit, in fact, chose "not pass on whether the FAA's evident partiality standard applies to arbitrations under the LMRA…<u>we assume that it does</u>." *Id.* at n.16 (emphasis added).

---

[1] Unless otherwise noted, all references to Exhibits refer to exhibits to the Amended Petition, ECF No. 16.

[2] The IC's use of bridge payments does not remedy this issue. Op.Br. 21–22. Under either option presented by the IC, Renwick will have to pay more than the obligation created under Article 52 if the hotel was permanently closed. See Yantz Decl. ¶ 17.

3

An award under the LMRA may be vacated under an evident partiality standard in the Second Circuit, and the IC's actions display his evident partiality. *See Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.,* 2005 WL 1661093 at *9 (E.D.N.Y. July 14, 2005) (evident partiality requires "an assessment of the facts"). The Union claims that the IC's citations to past IC precedent and the IWA itself, as well as his expressions of sympathy toward the hotels, rescue the Awards from any sign of evident partiality. But the Union refuses to actually assess the facts. The IC accepted the Union's argument, mixing and matching separate sections of the IWA, creating new remedies that do not exist under the agreement and have never before been recognized, Pet.Br. at 12, even going so far as to apply Article 52 (triggered only by hotel closures) to hotels that remain open and hosting guests, Exhibit D at 39. The Union asserts the IC's "fidelity" to the IWA, Op.Br. at 24, but nowhere does it counter these specific examples of the IC's abandonment of the IWA in a show of his evident partiality to the Union.

## II. The Union's Motion to Dismiss Should Be Denied Because the Awards Are Properly Subject to Judicial Review at This Time

### A. The Awards Are Final Because They Resolved All Claims and Determined Renwick's Legal Obligations

1.  Under the LMRA, the text of the Award, and the actions of the Union itself, the Award is final. An award is final if it is "intended by the arbitrators to be a complete determination of all claims submitted to them." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413 (2d Cir. 1980). Like the plaintiffs in *Zeiler v. Deitsch*, 500 F.3d 157, 169 n. 11 (2d Cir. 2007), the Union's "reliance on *Michaels* [] is unavailing." (citation omitted). The award issued by the IC in this case is "not [a] segment[] of a future conclusive award," nor is it a "determination[] required for furtherance of the arbitration." *Id.*

The Union submitted two issues to the IC in the initial Award: whether a temporary layoff of at least six months (1) triggered severance pay under the IWA; and (2) required "maintenance of health benefits" payments. Exhibit D at 7, 15. The IC completely determined those claims: Hotels bound by the IWA must pay severance, and may do so through "bridge

4

payments" to "employees on lay off at any time between October 1, 2020, and June 1, 2021." *Id.* at 38. And hotels must "continue to make contributions [to the Health Benefits Fund]…for 3 months." *Id.* at 41. The Second Award was similarly clear. The IC found "that [Renwick's] severance obligations under Article 52 are triggered by its indefinite layoff of its employees…and I order the Hotel to pay severance to them…as well as the three months of maintenance of benefits contributions." Exhibit G at 6. The Awards at issue are not "obviously conditional" on any other litigation or dispute. *See Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*, 2009 WL 3169973, at *5 (S.D.N.Y. Sept. 29, 2009). Even the Union recognizes that the Awards are final. Its representation (at 15) that Highgate has agreed to satisfy "Hotel obligations under the IWA as applied by the Awards" reflects that the awards establish an enforceable obligation.

      The Union's arguments regarding the finality of the two Awards are wrong for distinct, but related, reasons. The first Award establishes Renwick's obligation and sets the specific formula Renwick must follow to determine how much it is obligated to pay. The Union argues (at 10) that the Award "remains open" because individual hotels may "submit individual cases" to the IC. But the Union forgets that the Award only permits those "individual cases" if a hotel believes "its particular facts and circumstances exempt it" from the Award. Exhibit D at 41. Renwick is not arguing that it is *exempt* from the Award. Renwick is arguing that the IC lacked authority to enter the remedies included in the Award *at all*.

      As the for the second Award, the Union argues (at 13) it may bring an additional arbitration action against Renwick to determine if yet another Article of the IWA governs or if it is entitled to damages. The initiation of a different set of claims does not deprive earlier awards of finality. *See N.Y. Hotel & Motel Trades Council, AFL-CIO v. Hotel St. George*, 988 F.Supp. 770, 782 (S.D.N.Y. 1997) (disputes regarding "different violations of the agreement" created a new dispute between the parties). Further, the IC's decision in the Second Award to wait to determine additional penalties only confirms the IC's recognition of Renwick's obligation and does no more than bifurcate the separate issue of penalties, Exhibit G at 6. The

5

court may review the substance of such awards, because a petition to vacate in this circumstance is not "interlocutory," *Michaels*, 624 F.2d at 414,—the decision on the merits is final.

This Court also looks to the actions of the parties in relation to an award to evaluate finality. *See United Bhd. of Carpenters v. Tappan Zee Constructors, LLC*, No. 1:14-cv-03688, 2015 WL 10861108 at *11 (S.D.N.Y. Mar. 25, 2015) (the actions of parties "suggest the Parties' intent to have [the arbitrator] retain jurisdiction to expound upon and modify the May 4th Award as necessary"). The actions of the Union in this case are clear: it views the Award as final. It even entered into an agreement with Renwick's management company, Highgate, for Highgate to pay "amounts in satisfaction of those Hotel obligations under the IWA." Op.Br. at 15, Second Yantz Decl. Ex. A. But an award can only create "obligations" if it is final. Indeed, the Union's own descriptions of the Award show its finality, noting that "employers *owed* Article 52 severance pay." Op.Br. at 6, *see also* Bokerman Decl. ¶¶ 22, 35 ("Bedford/Renwick is an employer…bound by the IWA," and "Highgate agreed to pay severance amounts and Health Benefits Fund contributions in satisfaction of those obligations under [the Awards]"). And the Second Award also recognized that the Award was final, because it found that Renwick had offered no reason why it should be exempted from the Award. Exhibit G at 6. In other words, Renwick was, by default, bound by the Award. The Union's own actions regarding the Second Award therefore further confirm that the Awards imposed an enforceable legal obligation on Renwick. The Union sought a new arbitration to compel Renwick to pay into the Fund because the Award says Renwick must. Additionally, the Union sought payment of obligations under both Awards from Renwick's management company, Highgate, including "severance benefit contributions due and owing pursuant to [the Awards]." Second Yantz Decl. Ex. A at 1. And the Union agreed that payment from Highgate satisfied the Awards. *Id.* at 2, Bokerman Decl. ¶ 35. The Union therefore cannot possibly argue that Renwick is under *no* legal obligations from the Awards.

2. The Union also takes the unprecedented position that *functus officio* can never apply to arbitration awards under the IWA. Br. at 11. None of the limited exceptions to *functus*

6

*officio* raised by the Union and recognized in Article 26 or case law apply here. First, *Hotel Greystone Corp. v. New. York Hotel & Motel Trades Council, AFL-CIO*, 902 F. Supp. 482, 484 (S.D.N.Y. 1995), found an exception to *functus officio* when there was "confusion…about the issue originally submitted" and "newly discovered evidence," because the IWA requires arbitration for all grievances "which shall not have been adjusted," Art. 26(A). But the IC had already "adjusted" the Union's grievance in the original Award. There is no confusion about the Award. The Award determined that employers who have laid off employees since March due must pay severance and continued health benefits. And the Second Award was clear: the facts in the case were "undisputed," the hotel presented "no evidence," and the Union claimed that the first Award "was in error." Exhibit G at 2, 6, and 4. In other words, the Union opened the second arbitration solely to ask the IC to reenter the first Award. Therefore, the *Hotel Greystone* exception to *functus officio* does not apply.[3]

Second, while the Second Circuit recognizes an exception to *functus officio* when "an arbitral award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation," *Gen. Life Ins. Corp. v. Lincoln Nat' Life Ins. Co.*, 909 F.3d 544, 548 (2d Cir. 2018) (quotation marks and citations omitted), there is no such contingency or ambiguity here. Renwick's objections to the Award concern facts which existed at the time of the original Award. And no party is confused about what the Award requires. Its language is clear: it binds Renwick to make severance and health fund payments (purportedly) based on Article 52. The IC did not, however, retain jurisdiction to revisit whether Renwick must *make* those payments absent any other evidence or information. The current facts are similarly clear: Renwick is temporarily closed because of COVID, and the Award binds Renwick to pay severance under Article 52 and additional "maintenance of benefit" payments to the Fund

---

[3] The Union's reliance on *Hotel St. George*, 988 F.Supp. at 770, is puzzling. That case held that the *functus officio* did not apply because the second award in that case was "neither a reconsideration of, nor an amendment to, the [first] [a]ward." *Id.* at 781. But here, the Union explicitly requested that the IC reconsider his award as it "was in error." Exhibit G at 4.

7

on behalf of laid off employees. Any additional issues that may arise between the Union and the Hotel will require a new arbitration proceeding. *See Hotel St. George*, 988 F.Supp. at 782 (permitting an entirely new arbitration to adjudicate "a different claim" under the IWA between the Union and a hotel, even though the Union and that hotel had been subject to previous arbitration awards). Under the Union's proposed understanding of finality and *functus officio*, no award would ever be final for review. And any other disagreements between the Union and Renwick, *see, e.g.* Bokerman Decl. Ex. F (regarding Article 57 of the IWA), are independent arbitration issues before the IC that do not undermine the finality of the Award.

### B. The Controversy Is Not Moot Because the Court May Still Grant Effectual Relief to Renwick

This case is not moot because the Court may still grant Renwick relief by vacating the Awards. Mootness is "the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). Therefore, Renwick must prove that currently (1) it suffers an injury in fact, (2) there is a causal connection between that injury and the conduct brought to this court, and (3) this court can redress that injury through a favorable decision. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). Those requirements are obviously satisfied here. First, Renwick faces liability from the Awards for "severance…as well as three months of maintenance of benefits contributions." Exhibit G at 6. Any payments by Highgate to the Union do not moot Renwick's injury, because Renwick's agreement with its management company provides that it is liable for necessarily incurred "operating expenses" that generally include labor and employment costs like the payments here. Second Yantz Decl. Ex. A ("Highgate agrees to pay a total sum of [$200,897.93] to Hotel Employees…as severance" and $140,377.00 to the "Health Benefits Fund"). If the Award remains in place without being vacated, then Renwick faces the same claimed liability through its agreement with the management company. Vacatur of the award, however, would render the management company's payment to the Union gratuitous and

unnecessary, such that Renwick could face no liability. Accordingly, the management company's payment to the Union—if it has been made, which the Union's evidence does not support—does not relieve Renwick's injury caused by the awards or deprive this Court of power to redress that injury by vacating the awards.

Moreover, the agreement between Highgate and the Union explicitly reserves the Union's right to seek additional damages against Renwick *under the Awards*. Second Yantz Decl. Ex. A at 2. Without vacatur of the Awards, Renwick remains subject to additional liability to the Union, but with the legal basis of that liability (the IC's made-up obligations) already established by the Awards. Again, this Court retains power to redress that injury.

This case would only be moot if "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298 (2012). But the Court can, and should, grant Renwick the effectual relief that it seeks.

## Conclusion

Petitioner respectfully requests that this Court deny Respondent's motion to dismiss, and vacate both Awards.

Dated: January 22, 2021

Respectfully Submitted,

 /s/ Paul Rosenberg
PAUL ROSENBERG
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, N.Y. 10111
(212) 589-4299 (phone)
(212) 589-4201 (fax)
prosenberg@bakerlaw.com

ANDREW M. GROSSMAN (PHV)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1697 (phone)
(202) 861-1783 (fax)
agrossman@bakerlaw.com

*Attorneys for Petitioner*